in the cases piled flatwise. Notwithstanding the knowledge thus possessed by the libellants as to the piling flatwise, in one pile, of seven of the cases, they receipted for the twelve cases as in good order.

The libellants fail to show that the damage to the glass was caused by the piling of the seven cases flatwise, or by any other negligence on the part of the vessel, and the libel must be dismissed, with costs.

## Case No. 3,771.

DELIESSHINE v. The FRIENDSHIP.

[See Case No. 13,807.]

DELIESSELINE (ELKISON v.). See Case No. 4,366.

## Case No. 3,772.

The DELIGHT.

[Blatchf. Pr. Cas. 145.][1]

District Court, S. D. New York. April, 1862.

PRIZE.

Vessel and cargo condemned as enemy property, and for a violation of the blockade.

In admiralty.

BETTS, District Judge. This schooner, with a fishing seine and property on board of her, was captured, as prize, by the United States steamer New London, in Mississippi sound, on the 11th of December, 1861, fifty or sixty miles below New Orleans. The vessel was appraised by a naval board of survey, and appropriated to the use of the United States, on that valuation, by the United States flag officer in command in that vicinity, as necessary to the public service; and the property seized was transmitted by the seizing officer to this port, in the United States steamer Massachusetts, to be proceeded against within this jurisdiction. The documentary title to the schooner shows that she was transferred from her American ownership, and enrolled and licensed to citizens of the Confederate States, in the port of New Orleans, in April, 1861. She came out of New Orleans having on board a pass from the Confederate government, a rebel flag, and an old flag of the United States, which had been used on board of her before the Rebellion. She left New Orleans the 2d of December, 1861. The vessel and the articles on board were the property of residents of New Orleans. All the crew on the schooner had known, for four or five months, that New Orleans was blockaded, and that the United States vessels were lying before the place to maintain the blockade. The schooner was to return to New Orleans with the fish taken, for a market. The vessel and her equipments being indisputably enemy property, having also evaded the blockade of New Orleans, and being engaged in procuring supplies for an enemy port, to be conveyed thence for the use of public enemies, the vessel and all the property seized on board are subject to forfeiture for those causes. Judgment entered accordingly.

## Case No. 3,773.

DELILAH et al. v. JACOBS et al.

[4 Cranch, C. C. 238.][1]

Circuit Court, District of Columbia. Oct. Term, 1832.

SLAVERY—RIGHTS ACQUIRED UNDER FOREIGN LAW —IMPORTATION OF SLAVES.

1. Where civil rights are acquired under a foreign law, this court will enforce them.

2. The compact between Virginia and Maryland, does not prevent Maryland from prohibiting the importation of Virginia slaves from Virginia.

This was a suit for freedom. The plaintiffs [negro Delilah and others] claimed their freedom under the law of Maryland of 1796 (chapter 67), or the act of 1783, by being imported from Virginia into Maryland by a Mr. Childs, a citizen and resident of Maryland, who gave no list of them to be recorded, &c.

Mr. Neale, for defendants [George Jacobs and others], contended that this was a penal law of Maryland, which this court, sitting in this county, could not enforce.

But THE COURT (nem. con.) said, that where civil rights are acquired under a foreign law, this court will enforce them; and that this point in regard to the right of freedom, had been frequently decided by this court.

Mr. Neale also cited the 12th section of the compact between Virginia and Maryland, which authorizes the citizens of each state to bring their effects into the other state free of duty; and contended that Maryland could not prohibit her own citizens from bringing their slaves from Virginia into Maryland.

But THE COURT (nem. con.) said that the compact only prohibited the imposition of duties by Maryland, on the goods of citizens of Virginia, brought from Virginia, and vice versa, but did not prohibit Maryland from prohibiting her own citizens from importing slaves, or any other property, belonging to them.

## Case No. 3,774.

In re DELL.

[5 Sawy. 344.][2]

District Court, D. California. Dec. 24, 1878.

BANKRUPTCY — PROOF AGAINST SEPARATE ESTATE OF PARTNERS.

Where, out of a firm of four partners two were insolvent and one was bankrupt, and the

---

[1] [Reported by Samuel Blatchford, Esq.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]